State vs. Anderson and Blackstone.

---

No. 11,255.

THE STATE OF LOUISIANA VS. RANDELL ANDERSON AND ALLEN BLACKSTONE.

An indictment which correctly contains the defendant's name, but on the endorsement there is a variance, the endorsement may be corrected at any time to conform to the description in the body of the indictment.

No advantage can be taken of a defective endorsement corrected and amended with the consent of defendant in open court, aided and assisted by his counsel.

There are exceptions to the rule that no evidence is admissible of distinct offences committed by the defendant than that charged in the indictment, when it is material to show the intent with which the act charged was done.

The Supreme Court will not set aside a verdict on the ground that the attorney for the prosecution made statements to the jury not warranted by the evidence.

In such a case it is the duty of the trial judge to confine the attorney to within proper limits. But this is a matter relating to the discipline of the inferior court, with which this court will not interfere.

It is not necessary in a criminal case when the jury returns a verdict in writing, for it to be written in ink.

A verdict which finds the prisoner at the bar guilty as charged is responsive to the indictment. It is not necessary that each defendant should be named.

APPEAL from the Second District Court, Parish of Webster.
*Watkins, J.*

*M. J. Cunningham*, Attorney General, for the State, Appellee.

*L. K. Watkins* for the Defendants and Appellants.

The opinion of the court was delivered by

McENERY, J. The defendants were indicted for murder, tried and sentenced, the jury returning a verdict of guilty without capital punishment.

State vs. Anderson and Blackstone.

The defendant Blackstone in the body of the indictment was described as Allen Blackstone. The indictment returned and filed in court was endorsed Randell Anderson and Allen Blackshire.

The title of the case was docketed as endorsed, and the accused were arraigned and the defendant Blackstone pleaded not guilty. It was then immaterial whether the case was prosecuted as docketed, as the defendant had pleaded to the indictment. One of the objects of the arraignments is to identify the defendant, and he appeared and answered and thus identified himself as the person accused in the body of the indictment. But this clerical error was corrected. It appears from the judge's statement that the defendant Blackstone was also called Blackshire, and on being questioned he said his name was Blackstone.

On this statement made by him the name was changed to Blackstone, in open court, with the consent of the defendant and his counsel. The district attorney stated that he would prepare a written motion to change the endorsement so as to read Blackstone, if the defendant required a written motion, but if he did not require it he would make the change in the record, whereupon, by the consent of defendant and his counsel he changed the endorsement. Conceding that there was error in the endorsement, his consent cured the defect and is a sufficient waiver of a formal written notice.

The State offered a witness to prove the details of a difficulty between one of the accused and deceased on the day before the homicide. This witness' testimony was objected to by defendants on the ground that the " details of the transaction on Sunday could not be received in evidence, as it was a separate and distinct offence and no part of the present transaction, and not a part of the res gestæ."

The objection was overruled, the trial judge assigning as reasons therefor " that it was sought to be proved by the State that Randell Anderson and Jim Watson, the deceased, had a difficulty on Sunday, the day before Randell Anderson killed Jim Watson, in which difficulty Randell Anderson threatened Jim Watson. The details were allowed to show the threats and feeling between the parties."

There are exceptions to the rule that no evidence is admissible of other felonies or distinct offences committed by the defendant than that charged in the indictment, one of which is that when it is material to show the intent with which the act charged was done, evidence of the distinct offence may be received in evidence.

In the instant case the details of the difficulty were admitted to show the intent of the defendant.    Threats against the deceased are always admissible to show malice.    Whar. Homicides, Secs. 701, 702; State vs. Patza, 3 An. 512; State vs. Rohfrischt, 12 An. 382; State vs. Mulholland, 16 An. 377; State vs. Vines, 34 An. 181; State vs. Deschamps, 42 An. 568.

The trial judge, in applying the above principle to the facts incorporated in bill No. 2, we think was correct in his ruling.

In bill No. 2 it was shown that a witness was put on the stand in behalf of the State, and was asked by the district attorney "to tell what was said in a conversation by the defendant Randell Anderson, about the hog of John Snell, or the taking of John Snell's hog." This question was objected to by the defendants for reasons assigned in bill No. 1, and for the additional reason that the offence had no connection with the crime under investigation, and that it was only admissible to prove a threat against deceased.

The trial judge permitted the evidence to go to the jury, with the understanding that the district attorney should not ask the witness anything about the hog, unless he could prove a threat coupled with it. This ruling seems to have been satisfactory to defendants.    The district attorney repeated the identical question, which was again objected to by defendants.    The trial judge permitted the question to be answered subject to the ruling of the court.    The witness answered that he had not heard the accused say anything at the time about the hog, but the deceased had stated that the defendants had killed John Snell's hog.    The defendants were not present at this conversation.

In his reason for overruling the motion the trial judge says, the effort on the part of the prosecution was to show that the deceased had accused the defendants of hog stealing, to show a motive for the killing, and although the defendants were not present this conversation had been communicated to them.    So far as the evidence tended to show the intent, on the part of the defendant Anderson, the ruling was correct and in accord with the cases above recited, as authority for his reasons in admitting the testimony to which defendants objected in bill No. 1.    But in the argument of the case, the attorney employed to assist the district attorney stated to the jury in the closing argument that the defendant Anderson had murdered the deceased because he was a witness against him for stealing John

Snell's hog. The counsel for defendants called the attention of the court to the statement, but it was allowed to go to the jury, the trial judge stating in his reason appended to the bill that the statement was based on the facts as stated in bill No. 2.

Reference to bill No. 2 shows that the statment made by the assistant prosecutor is not borne out by the facts stated in said bill. It was the duty of the trial judge to have limited the statement, and to have warned the jury against its influence.

This is a matter, however, which is under the control of the trial judge, and comes under the discipline of his court; we have repeatedly stated that in all matters which relate to the discipline and order of the inferior tribunals, we will not attempt to control them in its exercise.

The jury was the judge of the facts in the case, and it was their province to determine what facts had been proved on the trial. The indiscreet statements of attorneys are not grounds for granting a new trial. Their assertions may not be of the facts, but the jury are not bound to receive them as a true statement of the case.

The defendants say in their motion for a new trial that the threats made by Randell Anderson, if true, would not have resulted in his conviction, unless coupled with the testimony in relation to the killing of the hog of John Snell by Allen Blackstone; and that Allen Blackstone would not have been convicted on the declaration made by himself and the evidence in the case against him, except for the prejudicial declarations and threats of Randell Anderson, in which he was no party, and did not concur and assent. All this may be very true, but the facts of the case were exclusively with the jury, and they have said that they were sufficient. We can not judge of the sufficiency of the testimony.

This statement will apply to the other reasons urged in the motion for a new trial.

We will, however, state that in the reasons for the denial of a new trial the district judge asserts the fact to be that both the defendants were present aiding and abetting at the homicide; that the homicide was the result of the charge of hog stealing made by deceased against defendant Allen Blackstone, and that Anderson intervened in this difficulty, and that both defendants were present when Anderson, a short time before the homicide, threatened the life of deceased, and that a conspiracy was sufficiently shown by the circumstances of the case, to kill the deceased by defendants.

The jury returned the following verdict: "We the jury find the prisoners at the bar guilty, as charged, without capital punishment." It was written in pencil.

In the motion in arrest of judgment, the verdict is objected to because it was "written in pencil and without giving the style of the case, and without designating the defendants by name, or otherwise, and without naming them severally at all, but simply styling them 'prisoners.'"

There is no law requiring a verdict in a criminal case to be written in ink. The accused were the only prisoners on trial before that jury and no other persons could have been intended than the "prisoners at the bar."

Judgment affirmed.